Welsh, J.
This is an action brought in the name of Mingo Corporation, an insured under a liability policy, against Essex Insurance Company (the insurer). The complaint is in two counts: Count I alleges a breach of contract on the part of Essex Insurance Company for refusal to defend a claim against the named insured allegedly within the coverage of the policy and for refusal to indemnify Mingo Corporation (hereinafter, Mingo) for monies paid by way of a settlement in an action filed against Mingo by an individual who allegedly was injured as a result of being ejected from the bar by “bouncers” employed by Mingo. Count II alleges that Essex knowingly or wilfidly engaged in unfair or deceptive acts or practices in vio *67 lation of G.L.c. 93A to the damage of the named insured.
The answer traversed and thus put in issue the assertion that Essex had a duty to defend or to indemnify the plaintiff and specifically set up exclusions in the policy as defenses to the claims asserted in the name of Mingo.
On or about July 15,1990, one Walter Dixon was a customer at Mingo’s public drinking and entertainment establishment on Nantucket and known as “The Muse.” A female patron had complained that Dixon had taken indecent liberties with her. This complaint led to a confrontation between one of the “bouncers” employed by “The Muse” and Dixon. Dixon denied any wrongdoing as regards the complaining female patron and refused to leave when the “bouncer” demanded that he do so. There ensued a scuffle between Dixon and the “bouncer.” Two other “bouncers” came to the aid of their embattled colleague and were finally able to subdue and physically eject Dixon from the premises.
Dixon commenced an action in the Superior Court against Mingo (d/b/a “The Muse”) and the bouncers for damages allegedly resulting from the physical ejection by the “bouncers.” Essex, although duly notified, declined to defend the action, claiming that certain exclusions in the policy relating to assault and battery and negligence in hiring or supervising employees excused the insurer from any obligation to defend the action or to indemnify the insured. Mingo and Dixon settled the action by entering into an agreement for judgment, whereby $15,000 was established as the amount of compensation to which Dixon was entitled. Four Thousand ($4,000) Dollars paid to Dixon was for legal costs incurred in prosecuting the action. The remaining $11,000 was to have been satisfied by an assignment to Dixon of any claim Mingo might have against Essex based upon failure to defend and/or Mure to indemnify. If Dixon, as assignee of Mingo’s claim against Essex succeeded in recovering on the insured’s claim, Mingo was entitled to reimbursement pro rata of the $4,000 cash paid, in the ratio that the sum recovered against Essex bore to the $15,000 agreed judgment in favor of Dixon against Mingo. In the event that more than $15,000 were recovered by Dixon as assignee of Mingo’s claim against Essex, reimbursement to Mingo was capped at $4,000.00. Thus, in the instant action, Dixon stands in the shoes of Mingo as assignee of its claim against Essex.
The trial judge made comprehensive findings of fact and offered detailed analysis, arriving at the conclusions that the insured did not satisfy its burden of showing that the case fell within one or more of the policy exclusions; that Dixon was not the victim of an assault and battery because the actions of the “bouncers” were justified; that Essex had both an obligation to defend and to indemnify; that, in any event to apply the exclusionary provisions in this case would offend public policy by discouraging owners of drinking establishments from early and timely intervention to prevent potential harm to other persons present by protecting them from unruly and aggressive patrons. The judge ordered judgment for the plaintiff on the contract count for $4,000 for reimbursement of legal expenses incurred by Dixon in the original action against Mingo Corporation, d/b/a “The Muse” and treble damages plus attorneys’ fees in the amount of $3,000 plus costs on the 93A count.
As a result of a motion to allow or amend judgment filed by the plaintiff, an amended judgment was entered increasing the award to $12,000 on the G. L.c. 93A count, plus attorney fees of $9,000, plus costs. The award on the contract count was not altered.
Both Mingo and Essex appealed agreeable to Rule 8C, Dist./Mun. Cts. RAD.A
We arrive at conclusions diverging from those of the trial judge. We determine that the court erred in its determination that the assault and battery exclusion contained in Essex Insurance Company’s policy was not applicable to the plaintiff’s claim or, if applicable, violated public policy. We conclude that Essex neither had a duty to defend Mingo in the action brought by Dixon nor to indemnify Mingo, and that there was error in failing to allow certain requests for rulings of law sought by Essex. Accordingly, the judgment for the plaintiff is reversed and judgment is to *68 enter dismissing the complaint on the merits.
1. The policy contained the following language as regards assault and battery:
Assault and Battery exclusion: It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or other persons.
Dixon, who is asserting Mingo’s claim against Essex, contends that the above exclusionary language does not apply because the complaint asserted and the facts warranted a conclusion that the “bouncers” were negligent in the manner in which they ejected Dixon. This contention is directly contradicted by the express language above cited, nor is there any finding of negligence by the trial judge. Whatever theory of recovery or damages is asserted, it is clear that the damages for which Dixon sought compensation were for bodily injuries arising out of the intentional conduct of the “bouncers” in physically ejecting Dixon from the premises. Such intentional conduct, whether justified or not, falls within the purview of the exclusion.
In support of its contention that the act of ejecting an unruly or obnoxious patron from a drinking establishment can constitute negligence which, under the doctrine of respondeat superior, will impose liability on the proprietor of the establishment, the plaintiff cites certain dicta in the case of Thompson v. Beliauskas, 341 Mass. 95 (1960), as follows:
... It could be found that the ejectment of an intoxicated person from a place where liquor is served is not uncommonly accompanied by the use of force and that its employment by [a “bouncer”] was to be expected and within the scope of his employment. It further could be found that its excessive use constituted negligence for which both defendants were liable ... Id. at 98.
The Thompson case is distinguished factually from the case sub judice in that the plaintiff in Thompson was not a patron of the establishment, but a pedestrian who was injured when the bouncer ejected an intoxicated person in such a way as to cause the ejected person to collide with the plaintiff. Hence the action was plainly based upon negligence rather than on a battery which both parties concede is an intentional tort.
Virtually every case called to our attention either is contrary to the plaintiff’s contention or is plainly distinguishable.
2. We recognize that even where it is ultimately determined that there exists no duty to indemnify the plaintiff, a legal duty to defend an action brought by a third party against the insured exists if the allegations of the complaint brought by the third party against the insured are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms. Sterilite Corp. v. Continental Casualty Co., 17 Mass. App. Ct. 316, 318 (1983). The appropriate focus in making such a determination is the factual core of the complaint rather than any particular theory of recovery enumerated therein. Rule 8(a), Mass. R. Civ. P. requires that a pleading setting forth a claim for relief contain a short and plain statement showing the pleader is entitled to relief and a demand for the relief to which he claims to be entitled. Unlike the pleading requirement in effect before the adoption of the Rules of Civil Procedure, a cause of action or theory of recovery need not be stated. If the conduct set forth in the pleading sets forth an intentional physical contact with another which is neither privileged nor consented to, then the nature of the claim is a battery: the essential character is not changed by inserting words describing such conduct as negligence.
3. We are of the opinion that the exclusion as to assault and battery is not so inimical to any public policy so as to nullify the exclusion. Any such determination we believe is better warranted by legislative consideration than through judicial construction.
*69 4. There is no evidence warranting a finding that the insurer failed to act in good faith on the claim or was dilatory or otherwise guilty of unfair or deceptive acts or practices in its determination that the claim was not within the policy or that it had no duty to defend. As stated, the great weight of authority both within and without this Commonwealth supports the position taken by Essex. Plainly, there is no evidence that Essex intentionally or knowingly violated G.L.c. 93A, so as to trigger the multiple damage provisions. Its coverage decision was based upon a reasonable interpretation of the policy language in the light of the decided cases in the field under consideration. It promptly notified the insured of its decision.
The case is remanded to the trial court where a judgment is to enter dismissing the complaint on the merits.
So ordered.