52 Mass. App. Ct. 189 (2001)                          189

Transamerica Insurance Company *v.* KMS Patriots, L.P.; K & K Insurance Group, Inc.

## Transamerica Insurance Company *vs.* KMS Patriots, L.P. & another[1]; K & K Insurance Group, Inc., third-party defendant.

No. 98-P-1236.

Norfolk. March 16, 2000. - August 2, 2001.

Present: Greenberg, Kaplan, & Smith, JJ.

*Practice, Civil,* Summary judgment. *Insurance,* General liability insurance, Insurer's obligation to defend, Defense of proceedings against insured. *Indemnity. Consumer Protection Act,* Insurance. *Libel and Slander. Privacy.*

An insurer was not obliged under a general liability insurance policy to defend its insureds in an action brought against them by a former employee, where the allegations of the complaint, based on personal injury for the publication or utterance of a libel or slander or disparaging material [192-195] and publication or utterance in violation of a right of privacy [195-196], were not reasonably susceptible of an interpretation that they stated or adumbrated a claim covered by the policy terms.

An insurer had no duty to indemnify its insureds under a general liability insurance policy, where it had no duty to defend the insureds based on the allegations of a complaint in an action brought against them by a former employee. [196]

Where coverage under a general liability insurance policy had been correctly denied, as in this case, there was no violation of G. L. c. 93A and G. L. c. 176D, proscribing unfair or deceptive trade practices. [197]

Civil action commenced in the Superior Court Department on August 16, 1993.

The case was heard by *Elizabeth Butler,* J., on motions for summary judgment.

*Henry A. Sullivan* for KMS Patriots, L.P., & another.

*William H. Clancy* (*Lawrence J. McNally, Jr.,* with him) for Transamerica Insurance Company & another.

Smith, J. The plaintiff, Transamerica Insurance Company (Transamerica), brought a declaratory action in the Superior

[1]Patrick Forte.

190        52 Mass. App. Ct. 189 (2001)

Transamerica Insurance Company *v.* KMS Patriots, L.P.; K & K Insurance Group, Inc.

Court against the defendants, KMS Patriots, L.P. (KMS),[2] Patrick Forte (Forte), VKK Corporation (VKK), and FWM Corporation (FWM). The plaintiff sought a declaration that it was not obliged under a general liability insurance policy (policy) it issued to KMS to reimburse KMS for legal fees or to indemnify the defendants in an action brought by a former employee of KMS against the defendants.

The defendants answered Transamerica's complaint and, in addition, filed a three-count counterclaim against Transamerica and K & K Insurance Group, Inc. (K&K), the administrator of the insurance policy at issue. The counterclaim requested a declaration that the insurance policy Transamerica issued to KMS did require Transamerica to defend and indemnify the defendants (count III). It also claimed that Transamerica had violated the terms of the policy (count I) and had engaged in unfair claim settlement practices in violation of G. L. c. 93A, and G. L. c. 176D, § 3 (count II). Transamerica and K&K filed respective replies each denying liability and setting forth various defenses.

Transamerica moved for summary judgment on its complaint, and Transamerica and K&K also moved for summary judgment on the defendants' counterclaim. The defendants filed a cross motion for summary judgment on counts I and II of their counterclaim. After a hearing, a Superior Court judge entered an order declaring that the policy did not obligate Transamerica to defend or indemnify the defendants in regard to the employee's claim and subsequently issued an amended order allowing Transamerica's and K&K's summary judgment motion and denying the defendants' motion. The defendants appealed from the ensuing judgment. We affirm.

We summarize the facts contained in the materials before the motion judge. Between May 9, 1991, and July 6, 1992, KMS was covered by a general liability insurance policy issued by Transamerica that included, among other provisions, a broad

___

[2]In February of 1994, the Patriots franchise was sold and KMS Patriots, L.P., was renamed New England Patriots, L.P. New England Patriots is the successor-in-interest to any coverage available under the KMS policy.

form comprehensive general liability endorsement (CGLE).[3] Under the CGLE, Transamerica contracted to pay, on behalf of the insured, "all sums which the insured shall become legally obligated to pay as damages because of personal injury . . . to which this insurance applies . . . ," and to "defend any suit against the insured seeking damages on account of such injury even if any of the allegations of the suit are groundless, false, or fraudulent . . . ."[4] A set of definitions in section II(D) of the CGLE defined "personal injury" to mean "injury arising out of one or more of the following offenses committed during the policy period: . . . 3. a publication or utterance (a) of a libel or slander or other defamatory or disparaging material, or (b) in violation of an individual's right to privacy. . . ."

On or about April 3, 1992, Carolyn Palla, a former employee of KMS and a resident of Rhode Island, filed a four-count complaint in the United States District Court for the District of Rhode Island against KMS, Forte, VKK, and FWM. In her complaint, Palla alleged claims for unlawful discrimination in violation of G. L. c. 151B (count I); breach of an employment contract (count II); intentional infliction of emotional distress (count III); and assault and battery (count IV).

According to the complaint, the defendant Forte was vice-president of administration for KMS, and Palla had been employed as his assistant from June 24, 1991, until October 29, 1991. The complaint alleged that Palla was subject to various forms of sexual harassment by Forte "including physical touching and verbal propositions and comments" throughout the term of her employment. The unwanted touching included Forte hugging and kissing her on several occasions and, on one occasion, placing his hand inside the back of Palla's skirt on the pretext of fixing the zipper on her skirt. The unwelcome physical contact occurred at work and also, on one occasion, after work

---

[3]Transamerica also issued a second policy to KMS that provided coverage for losses that exceeded the limits of the general liability policy.

[4]In addition to personal injury coverage, the policy also included bodily injury and contract coverage. On appeal, the defendants rely solely on the personal injury coverage in the policy. This court has previously noted, under different circumstances, that this definition of personal injury is "very limited." *LaFrance* v. *Travelers Ins. Co.*, 32 Mass. App. Ct. 987, 987 & n.1 (1992).

at a nearby establishment with other employees present. The harassing comments consisted of numerous unwanted questions about her relationship with her boyfriend, calling her "cupcake," and complimenting her appearance. Her complaint also alleged that, after she rejected Forte's advances, a rumor circulated in the workplace that she was having an affair with Forte. She further alleged that KMS "condoned and ratified [Forte's] misconduct and took no action to stop it or to discourage discriminatory sexually harassing conduct . . ." and that "she was ultimately dismissed because she refused to submit to further harassment or to engage in sexual conduct with Forte."

In June of 1992, the defendants asked Transamerica to indemnify them against Palla's claims and to provide a defense to her complaint.[5] By letter dated July 9, 1992, Transamerica denied coverage on the ground that the employee's allegations were not covered by the policy.

Palla's suit was eventually settled. On February 25, 1993, the defendants notified Transamerica that the costs of defending and settling Palla's claim amounted to approximately $227,000, and made formal demand for coverage pursuant to G. L. c. 93A and G. L. c. 176D. Transamerica then filed this complaint.

In reviewing a grant of summary judgment, we determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law. Mass.R.Civ.P. 56, 365 Mass. 824 (1974)." *Judson* v. *Essex Agric. & Technical Inst.*, 418 Mass. 159, 162 (1994), quoting from *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). "Here, where both parties moved for summary judgment, and the evidence taken in the light most favorable to [the defendants] entitled Transamerica [and K&K] to a judgment as a matter of law . . . the judge properly granted Transamerica's [and K&K's] summary judgment motion and properly denied [the defendants'] motion." *Timpson* v. *Transamerica Ins. Co.*, 41 Mass. App. Ct. 344, 346 (1996).

1. *Transamerica's duty to defend.* It has been held that "a li-

---

[5]The parties disagree on the timeliness and sufficiency of KMS's notice to Transamerica that KMS and Forte may have been facing liability to Palla. We do not address these issues in view of our decision in this matter.

52 Mass. App. Ct. 189 (2001) 193

Transamerica Insurance Company *v*. KMS Patriots, L.P.; K & K Insurance Group, Inc.

ability insurer owes a broad duty to defend its insured against any claims that create a potential for indemnity." *Doe* v. *Liberty Mut. Ins. Co.*, 423 Mass. 366, 368 (1996). "It is settled in this jurisdiction, and generally elsewhere, that the question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318 (1983). *Swift* v. *Fitchburg Mut. Ins. Co.*, 45 Mass. App. Ct. 617, 623 (1998). "However, when the allegations in the underlying complaint 'lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate' or defend the claimant." *Timpson* v. *Transamerica Ins. Co.*, 41 Mass. App. Ct. at 347, quoting from *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 168 (1983).

a. *Personal injury coverage for the publication or utterance of a libel or slander or other disparaging material.* The defendants claim that Palla's complaint alleged a "personal injury" as defined by the CGLE because the complaint contained allegations of "3. a publication or utterance (a) of a libel or slander or other defamatory or disparaging material . . . ." The defendants cite, in particular, an allegation in Palla's complaint that, after she rejected Forte's advances, a rumor circulated in the workplace that Forte was having an affair with her. They argue that the allegation should have put Transamerica on notice of a potential defamation claim. That allegation, however, does not in any way suggest that KMS or Forte published or otherwise spoke to others about the alleged affair. At most, the allegation states only that Forte's behavior toward Palla led others to talk of an affair.

Other allegations in Palla's complaint refer to suggestive comments made by Forte to Palla, and Forte's refusal to provide information to Palla regarding the reasons for her termination. Because there was no allegation that the comments were published or uttered to others, none of Palla's allegations state a defamation claim against the defendants. See *Correllas* v.

*Viveiros*, 410 Mass. 314, 319 (1991) ("Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt"). See also *Ellis* v. *Safety Ins. Co.*, 41 Mass. App. Ct. 630, 636 (1996). As the Supreme Judicial Court observed in *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 12 (1989), the inquiry does not end here because the policy language, "other defamatory or disparaging material," "extends the coverage of the policy beyond actions for libel or slander."

In this regard, the defendants also claim that Palla's answer to a KMS interrogatory in her action triggered coverage under the CGLE. Palla was asked in an interrogatory to detail her damages. In her answer, Palla stated that she was seeking damages for. her termination, among other things, because "it will be very difficult for me to obtain further employment for a national football league team, franchise or other similar organization as a result of my termination and its characterization by KMS. . . ." The defendants claim that, as a result of that answer, Palla's complaint could be read as alleging that her termination by KMS and Forte had the effect of publishing "disparaging material" about her. See *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. at 12 (even though actress's complaint did not specifically so recite, it still could be fairly read as alleging that cancellation of her contract was a statement about her, to others, which "spoke slightingly of her and damaged her reputation").

We recognize that "the obligation of the insurer to defend is based not only on the facts alleged in the complaint[ ] but also on the facts that are known or readily knowable by the insurer." *Desrosiers* v. *Royal Ins. Co. of America*, 393 Mass. 37, 40 (1984). *Swift* v. *Fitchburg Mut. Ins. Co.*, 45 Mass. App. Ct. at 623-624. According to the record, Palla's answers to KMS's interrogatories were signed by her on November 13, 1992, more than seven months after she filed her complaint. Further, there is nothing in the record as to when Palla actually served her answers upon KMS or when Transamerica received a copy of the answers from KMS. Contrast *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. at 9 (insurer was

informed on two occasions of facts vital to coverage under policy).

Because there was nothing in the record to demonstrate that Transamerica was aware of the existence of Palla's answer to the interrogatory and its contents, we reject the defendants' argument that the answer to this interrogatory triggered a duty to defend.

b. *Personal injury coverage for publication or utterance in violation of right of privacy.* The defendants also claim that they were entitled to a defense pursuant to that portion of the CGLE which defined "personal injury" as a "3. a publication or utterance . . . (b) in violation of an individual's right to privacy."

The defendants acknowledge that the tort of invasion of privacy is not one of the four counts enumerated in Palla's complaint but argue that certain allegations in Palla's complaint may be " 'reasonably susceptible' of an interpretation that they state or adumbrate a claim" of invasion of privacy. *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. at 318.

Those allegations may be summarized as follows: during the initial employment interview, Forte asked Palla whether she was married; whether she had a boyfriend; how long she had dated; and whether her boyfriend was going to marry her. There were also allegations that, during Palla's employment, Forte frequently took an interest in the status of Palla's relationship with her boyfriend, including asking her if her boyfriend was going to marry her.

The CGLE required that there be "a publication or utterance . . . in violation of an individual's right to privacy." The defendants argue that Forte's alleged comments to Palla were "utterances" and therefore covered by the policy.[6]

The tort of invasion of privacy is set out in G. L. c. 214, § 1B, as inserted by St. 1973, c. 941, which states, in relevant part, "[a] person shall have a right against unreasonable,

---

[6]The defendants also argue that there was "publication" of the comments. We reject the defendants' argument because there was no allegation whatsoever that the comments were published to others.

196          52 Mass. App. Ct. 189 (2001)

Transamerica Insurance Company v. KMS Patriots, L.P.; K & K Insurance Group, Inc.

substantial or serious interference with his privacy."[7] Thus, in order to prove an invasion of privacy claim under the statute, a person must allege an unreasonable, substantial, and serious interference with his or her privacy. *Schlesinger* v. *Merrill Lynch, Pierce, Fenner & Smith*, 409 Mass. 514, 517-519 (1991).

Here, the allegations concerning Forte's comments were specifically referenced to Palla's claim that she was terminated because she refused to submit to Forte's sexual advances and harassment. Palla did not allege that the comments were an unreasonable, substantial, or serious interference with her privacy. Further, there is nothing in the comments that may be reasonably susceptible of an interpretation that they stated a claim of invasion of privacy.

We emphasize that in reaching our decision we did not consider allegations of Forte's physical contacts with Palla. Such misconduct because it was nonverbal could not be labeled as "publications or utterances" as required by the policy and clearly falls outside of the policy's coverage.

In sum, we hold that Transamerica's duty to defend under the policy was not triggered by Palla's complaint.[8]

2. *Transamerica's duty to indemnify.* The duty to indemnify is narrower in scope than the duty to defend. See, e.g., *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. at 10-11; *Swift* v. *Fitchburg Mut. Ins. Co.*, 45 Mass. App. Ct. at 623. Thus, "[i]f an insurer has no duty to defend based on the allegations in the plaintiff's complaint, it necessarily follows that the insurer does not have a duty to indemnify." *Bagley* v. *Monticello Ins. Co.*, 430 Mass. 454, 459 (1999). Here, because Transamerica had no duty to defend KMS, it had no duty to indemnify.

---

[7]The Supreme Judicial Court has declined to determine whether there is a comparable common law claim in tort for invasion of privacy. *Tower* v. *Hirschhorn*, 397 Mass. 581, 585 n.4 (1986).

[8]The defendants also claim that the policy at issue here did cover losses resulting from harassment claims because Transamerica sold KMS an excess liability policy that excluded coverage for such losses. (See note 3, *supra.*) That claim ignores "the basic principle that exclusion clauses *subtract* from coverage rather than grant it." (Emphasis in original.) *Bond Bros.* v. *Robinson*, 393 Mass. 546, 550 (1984), quoting from *Weedo* v. *Stone-E-Brick, Inc.*, 81 N.J. 233, 247 (1979).

3. *Transamerica's chapter 93A and chapter 176D liability.* Liability under G. L. c. 93A is based upon the employment of unfair and deceptive acts and practices. *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. at 14. Liability under G. L. c. 176D is based upon the employment of unfair claims settlement practices. When coverage has been correctly denied, as in this case, no violation of the Massachusetts statutes proscribing unfair or deceptive trade practices may be found. See *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 717 (1989); *Timpson* v. *Transamerica Ins. Co.*, 41 Mass. App. Ct. at 353; *Spurlin* v. *Merchants Ins. Co.*, 866 F. Supp. 57, 62 (D. Mass. 1994).

*Judgment affirmed.*