Botsford, J.
The plaintiffs Binar Tamm and Compendium Research Company (“Compendium”) bring this action against their insurer, the defendant Hartford Insurance Company (“Hartford”). The complaint alleges that Hartford breached its duty to defend under a commercial general liability insurance policy issued to the plaintiffs by Hartford (Count I); and breached its duty of good faith and fair dealing in violation of G.L.c. 93A and G.L.c. 176D (Count III). Plaintiffs also seek declaratory relief with respect to Hartford’s duty to defend under the policy (Count II). Hartford filed a counterclaim requesting a declaratory judgment that it has no duty to defend or indemnify the plaintiffs.
The plaintiffs have moved for summary judgment on Count I (and in substance Count II), arguing that as a matter of law, Hartford breached its duty to defend the plaintiffs in a lawsuit filed against them in the United States District Court for the District of Massachusetts, Eagle Investment Systems Corp. v. Einar Tamm and Compendium Research Corporation, C.A. No. 01-10192JLT (“the Eagle lawsuit”). Hartford opposes the motion and requests, presumably pursuant to Mass.R.Civ.P., Rule 56(c), that summary judgment enter against the plaintiffs and in Hartford’s favor on the duty to defend.[1] For the following reasons, plaintiffs’ motion is allowed in part.
BACKGROUND
The summary judgment record reflects the following facts. Hartford issued a primary commercial general liability policy (“policy”) to the plaintiffs for the period August 31,2000 through August 31,2001, and *536 for the following annual renewal period. One provision of the policy that details business liability coverage states that Hartford “will pay those suits that the insured becomes legally obligated to pay as damages because of . . . ‘personal injuiy’ ... to which this insurance applies. [Hartford] will have the right and duty to defend any ‘suit’ seeking those damages.” As defined in the policy, “personal injuiy” includes:
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person’s goods, products or services;
e. Oral or written publication of material that violates a person’s rights of privacy
(Policy, Section G(14)(d) and (e).) The terms “rights of privacy” and “person” are not defined anywhere within the policy.
The Eagle lawsuit was initiated on February 1, 2001. The plaintiff Eagle Investment Systems Corporation (“Eagle”), was a former customer of Tamm. The Eagle lawsuit, naming both Tamm and Compendium as defendants,[2] contains, inter alia, the following allegations. Tamm began working for Eagle in July 1996, on a work-for-hire basis as a software programming consultant. Tamm signed a Service Agreement with Eagle as soon as he began working there. Section 13 of the agreement provides, in relevant part, thatTamm may not, “without the prior written approval” of Eagle “disclose to others, or use for [Tamm’s] own benefit, confidential unpublished information relating to the business, research or trade secrets of [Eagle] . . .”
Throughout his employment at Eagle, Tamm’s work included performance testing and fixing software bugs within the code of a new software program pilot. On June 29, 1997, Tamm submitted an invoice for $38,000 for software that he had developed since his employment at Eagle. Tamm was informed that he had already been compensated for its work and Eagle did not pay the invoice. Tamm periodically sent similar invoices to Eagle for approximately three years until the date of his termination on October 23, 2000. Tamm also submitted two demand letters, dated Jan-uaiy 17, 2001 and January 25, 2001, to Fred Schpero, the CFO of Eagle at the time.[3]
Tamm sent an e-mail on January 25, 2001, to certain outside counsel for Eagle which stated that he “. . . learned tonight that Eagle is initiating [sic] litigation counsel via Palmer & Dodge [sic] . . .” (Eagle lawsuit, ¶ 40.) Paragraph 40 further alleges that:
Tamm sent a copy of this e-mail to Craig Stewart, a partner at Palmer & Dodge LLP and one of Eagle’s attorneys ... On information and belief, Tamm has been unlawfully accessing one or more private and confidential e-mail accounts of Eagle and/or its executives. That is how Tamm learned of privileged communications between Eagle and its attorneys, and how Tamm acquired Craig Stewart’s e-mail address.
The Eagle lawsuit alleges that Tamm forwarded the same e-mail message to two other outside counsel for Eagle, Kenneth Sallinger and Christine O’Connor. Eagle also contends that Tamm “intercepted further privileged communications between Eagle and its attorneys, which included e-mail addresses for Sallinger and O’Connor.” (Eagle lawsuit, ¶ 41.)
In addition to allegations of accessing and distributing information obtained in private email accounts, the Eagle lawsuit also alleges that Tamm “threatened to contact a list of specific e-mail addresses for individuals at Warburg, Pincus (an Eagle investor) and for other employees at Eagle.” Based on these and other factual allegations, the Eagle lawsuit sets out ten counts against Tamm, including violations of RICO, misappropriation of trade secrets, and violations of Federal wiretapping laws. The lawsuit requests that the court restrain Tamm and Compendium from “disclosing to any person or entity, or using in any other manner, any confidential or proprietary information or materials belonging to or wrongfully acquired from Eagle or its officers, directors, employees, attorneys, or agents.”
In the current motion for summary judgment, plaintiffs argue that Hartford had, and continues to have, a duty to defend against the Eagle lawsuit.[4] Hartford has, in response, filed a cross motion for summary judgment and requests relief on all counts of the plaintiffs’ complaint.
DISCUSSION
Summary judgment is granted when there are no genuine issues of material fact in dispute, and where the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The adverse party may not defeat a motion for summary judgment by resting on the allegations of its pleadings, but must affirmatively set forth specific facts with affidavits, deposition transcripts, answers to interrogatories or admissions on the file showing that there is a genuine issue of triable fact. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Plaintiffs contend that Hartford breached its duty to defend the Eagle lawsuit under its policy. Plaintiffs rely upon, and Hartford does not dispute, the well-settled rule in Massachusetts regarding an insurer’s duty to defend against a third-party lawsuit under a commercial general liability insurance policy as set forth by Sterlite and its progeny. See, generally, Sterlite Corp. v. Continental Cas., 17 Mass.App.Ct. 316 (1983). “A liability insurer has the duty to defend third-party actions against an insured if the allegations in the *537 third-party complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms.” Trustees of Tufts University v. Commercial Union Ins. Co., 415 Mass. 844, 847 (1993), citing Liberty Mutual Ins. Co. v. SCA Servs., Inc., 42 Mass. 330, 331-32 (1992); Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146-47 (1984). “A liability insurer owes a broad duty to defend its insured against any claims that create a potential for liability.” Transamerica Ins. Co. v. KMS Patriots, L.P., 52 Mass.App.Ct. 189, 193-96 (2001). The underlying complaint must only show through “general allegations” a possibility that the liability claim falls within coverage. Sterlite Corp., supra, 17 Mass.App.Ct. at 319.
The Sterlite rule requires the examination of three specific elements: the underlying complaint, the policy itself and any extrinsic facts outside of the underlying complaint which proves that the insurer has a duty to defend. Sterlite Corp., supra at 318. An insurer’s duty to defend is “based not only on the facts alleged in the complaint, but also on the facts that are known or readily knowable by the insurer.” Desrosiers v. Royal Ins. Co. of America, 393 Mass. 37, 40 (1984), citing Terrio v. McDonough, 16 Mass.App.Ct. 163, 167 (1983).
The plaintiffs argue that the Eagle complaint “states or adumbrates” various allegations of invasion of privacy and defamation against Tamm and Compendium, thus triggering Hartford’s duty to defend under the policy. Matching up the underlying Eagle complaint and the applicable language in Hartford’s policy, I conclude that Hartford has a duty to defend the plaintiffs because of general allegations of invasion of privacy, but not under a theory of defamation.[5]
In order to trigger the duty to defend under the invasion of privacy language of the policy, an underlying complaint must allege two things: (1) an “oral or written publication” of (2) “materials that violate person’s rights of privacy.” The Eagle complaint alleges that Tamm accessed the private e-mail accounts of Eagle and its executives and sent these private communications and materials to several outside counsel for Eagle. The allegations of sending these private communications via e-mail to outside attorneys seemingly satisfies both prongs under the invasion of privacy clause of the policy.
First, Massachusetts courts have held that intra-corporate disclosures among employees of the same company constitutes publication for purposes of an invasion of privacy. See Bratt v. International Business Machines Corp., 392 Mass. 508, 519 (1984). It would follow from this that disclosures to outside counsel for the corporation may also qualify as a publication. Second, in order to state a claim for invasion of privacy in Massachusetts, the complaint must allege an “unreasonable, substantial and serious interference with [a person’s] privacy.” Transamerica Ins. Co. v. KMS Patriots, L.P., supra, 52 Mass.App.Ct. at 195-96, quoting Schlesinger v Merrill 409 Mass. 514, 517-19. Courts have held that reading and reproducing materials contained in private mail is a per se invasion of privacy. See, e.g., Birnbaum v. United States, 588 F.2d 319, 323 (2d Cir. 1978) (invasion of privacy was found when citizen’s mail was opened by the CIA). At least one Massachusetts court has held that reading and opening a person’s e-mail constitutes an invasion of privacy. See Restuccia v. Burk Technology, Inc., Case No. 95-2125, 5 Mass. L. Rptr. 712, 1996 Mass. Super. LEXIS 367. The Eagle complaint alleges in numerous paragraphs that Tamm accessed and utilized confidential information contained in private e-mails. Reading these allegations of access and use of confidential and private e-mails together with the allegations about the e-mails Tamm sent to Palmer & Dodge lawyers leads to the conclusion that the Eagle complaint “states or adumbrates” a claim based on the “unreasonable, substantial and serious interference of privacy.”
Furthermore, the policy language indicates that Hartford has a duty to defend any lawsuit seeking damages based on a “personal injury” claim. Even though the Eagle complaint does not contain an explicit claim for invasion of privacy (or defamation), it requests that the court restrain Tamm and Compendium from acquiring, accessing, and distributing confidential information. This request supports the determination that the complaint generally implicates a claim for invasion of privacy.
Hartford argues that its duty to defend the Eagle lawsuit under the right of privacy provision of the policy is non-existent because the provision is concerned with a person’s right to privacy. Since Eagle is a corporation and not a person, Hartford contends that it has no duty in this case. Since the term “person” is not defined in the policy, there is some possibility that it includes corporations as well as individuals.[6] Moreover, insofar as the complaint alleges that Tamm invaded the private e-mail accounts belonging to specific individuals, such as Kevin Sullivan (see Eagle lawsuit, ¶45), Eagle could be seen as invoking “representational standing” by asserting the privacy rights of its employees. It appears that this question of representational standing has been left open by the Supreme Judicial Court. See Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 50 and 57 (1998).
Hartford also argues that it does not have a duty to defend based upon the “Criminal Acts” exception found under Paragraph B(l)(p)(3) of the policy, which states that the insurer will not defend a suit “arising out of a criminal act committed by or at the direction of any insured.” This argument falls short, however, because the underlying Eagle complaint is civil in nature and makes no allegations of criminal conduct.
*538 ORDER
For the foregoing reasons, it is ordered that the plaintiffs’ motion for summary judgment on Count I of the plaintiffs’ complaint be allowed in part.

Hartford’s opposition to the plaintiffs’ summary judgment motion also requests summary judgment in its favor on Count III of the complaint, dealing with G.L.c. 93A. I do not consider this opposition as a separate cross motion for summary judgment and, in any event, Hartford is not entitled to summary judgment on Count III at this time.

Hamm was employed by Eagle starting in July 1996, through a temporary-help placement company called New Boston Systems, Inc. Tamm’s employment with New Boston expired around June 1997 and he continued working for Eagle through his own company called Compendium Research.

The Eagle lawsuit alleges that Tamm requested the $38,000 fee on at least four separate occasions from May 1, 2000 through January 5, 2001. It also alleges that Tamm requested a total of $1,368,000 in the January 17 demand letter and $1.3-$4.4 million over the telephone to one of Eagle’s executives on January 23, 2001.

Although the plaintiffs request four specific elements of relief in this motion, it is only necessary to discuss the dismissal of Count I of the Complaint. As discussed at the hearing on this motion, the question of attorneys fees and costs cannot be decided by summary judgment at this time.

With respect to the defamation claim, although the Eagle complaint alleges that Tamm threatened to contact certain Eagle investors if payment of his fee was not made, there are no allegations that he actually carried out these threats and communicated any statements that could reasonably be taken as defamatory. (See Eagle lawsuit, ¶39.)

I recognize that the policy provision dealing with defamation separately mentions both a “person” and an “organization,” perhaps suggesting that as a general matter, the term “person” in the policy does not include corporate or other entities. Without a definition of “person” in the policy, however, the meaning of the term is not entirely clear.