## Town of Hanover *vs.* Frank Cervelli.

No. 05-P-215.

Plymouth. December 15, 2005. - July 7, 2006.

Present: Gelinas, Kafker, & Mills, JJ.

*Contract,* Performance and breach, Specific performance, Condition, Option. *Damages,* Breach of contract. *Real Property,* Option. *Municipal Corporation,* Aquisition of real estate.

In an action brought by a town against a landowner, seeking breach of contract damages and specific performance of the parties' option contract for the purchase of land, the landowner could not be excused from performance based on the town's failure formally to assure him that it would adhere to its statutory obligations to discharge the landowner from paying certain taxes [673-674]; however, the town was not entitled to so-called "reliance" damages where it failed to sustain its burden of showing that such losses were within the contemplation of the parties at the time of the execution of the option agreement [674-676].

Civil action commenced in the Superior Court Department on June 20, 2000.

The case was heard by *Ernest B. Murphy,* J.

*John T. Spinale* for the defendant.

*James A. Toomey* for the plaintiff.

Gelinas, J. Frank Cervelli appeals from a Superior Court judgment in favor of the town of Hanover (town) in its action for breach of contract damages and specific performance of the parties' option contract for the purchase of Cervelli's land. We affirm the grant of specific performance, but reverse the award of damages.

*Facts.* We set out the facts generally, as stipulated by the parties,[1] reserving some details for discussion of the issues. The land at issue consists of some seventy-four acres of farmland

---

[1] The trial judge's findings of fact are consistent with the parties' stipulations.

located in Hanover. In or about late 1998, Douglas Thomson, chair of the town's open space committee, contacted Cervelli to inquire about the possibility of Cervelli selling the land to the town. Cervelli's attorney and Thomson, assisted by his father, continued to discuss the sale into early 2000. In mid-April of 2000, the town's counsel sent a draft agreement of an option to purchase land (option agreement) to Thomson. Cervelli's attorney, the town's counsel, and Thomson's father communicated back and forth regarding the terms of the option agreement. On May 1, 2000, Cervelli's attorney faxed to Cervelli the final version of the option agreement, which gave the town the option to purchase the land for $1,380,000 before July 1, 2000. On that same day, Cervelli signed the option agreement at his home without counsel present and then faxed it to Thomson's father. Cervelli subsequently destroyed the original option agreement he had signed.

On May 5 and 12 of 2000, letters were faxed to Cervelli's attorney requesting that the original option agreement be submitted to the town. On May 23, 2000, Cervelli's attorney responded by letter, purporting to revoke Cervelli's signature on the option agreement. On June 2, 2000, the town's counsel sent Cervelli's attorney a letter expressing the town's position that Cervelli lacked the legal ability to revoke his signature, and that the town was exercising its option to purchase and intended to proceed with the transaction. On June 30, 2000, the town's counsel faxed a letter to Cervelli's attorney that documented their telephone conversations that the town stood ready all day to close on the transaction.

*Specific performance.* Cervelli argues that the town is not entitled to specific performance because it failed to properly exercise the option agreement by failing to meet one of its conditions,[2] namely, that Cervelli be discharged from any obligation to pay roll-back taxes under G. L. c. 61A.[3]

The town argues that Cervelli waived this argument by fail-

---

[2]The relevant language of the option agreement is as follows: "Grantee's option to purchase is subject to . . . (3) Grantor *being* discharged from any obligation to pay roll-back taxes under G. L. c. 61A" (emphasis supplied).

[3]Cervelli's land was assessed as agricultural land and taxed at favorable rates pursuant to G. L. c. 61A. When land taxed as such is taken out of agricultural use, G. L. c. 61A, § 13, provides, subject to certain exceptions,

ing to raise it in Superior Court and that, in any event, it lacks merit. Cervelli contends that his answer to the town's complaint, as well as the parties' joint pretrial memorandum, adequately raised the issue. Cervelli argues that he was entitled to an "ironclad assurance" from the town that he would not be liable for roll-back taxes, and that the town's failure to so provide, prior to July 1, 2000, excused his requirement to convey.

Prescinding from the town's argument of waiver, we conclude that this condition of the option agreement was adequately fulfilled by the town based on G. L. c. 61A, § 13, inserted by St. 1975, c. 794, § 7, which mandates in part that "no roll-back taxes shall be applicable if the land involved is purchased for a public purpose by the city or town in which it is situated." Regardless whether the town, prior to July 1, 2000, failed to "demonstrat[e] its ability or willingness in writing to discharge Cervelli" of any obligation to pay these taxes, given the language of the statute, any such formal assurance would be redundant and meaningless. In addition, the town gave no indication that it would attempt to impose roll-back taxes, and even had it done so, the statute would provide a clear, impenetrable defense to any such attempt. This condition of the option agreement merely reflected the statutory reality, and Cervelli cannot be excused from performance based on the town's failure to formally assure Cervelli that it would adhere to the statute.

*Damages.* Cervelli also argues that the town was not entitled to "reliance damages." Prior to Cervelli signing the option agreement, the town sought and conditionally received a State grant in the amount of $50,000 for the purchase of lands for public recreational use. The grant, which expired in June of 2000, was lost when Cervelli failed to convey the land. The town agrees with Cervelli that it is not entitled to damages on a reliance theory. The town, however, argues that, although characterized by the trial judge as reliance damages, the amount is really ordinary breach of contract damages, which the town is entitled to receive, and therefore this court may affirm the award. See *Dorchester Mut. Fire Ins. Co.* v. *First Kostas Corp.*, 49 Mass. App. Ct. 651, 653 (2000) ("It is well established that, on appeal, we may consider any ground apparent on the record

---

that additional taxes, referred to as "roll-back taxes," be paid.

that supports the result reached in the lower court" [citation omitted]).

"The fundamental principle of law upon which damages for breach of contract are assessed is that the injured party shall be placed in the same position [that it] would have been in[] if the contract had been performed, so far as loss can be ascertained to have followed as a natural consequence and to have been within the contemplation of the parties[,] as reasonable [people][,] as a probable result of the breach . . . ." *John Hetherington & Sons, Ltd.* v. *William Firth Co.*, 210 Mass. 8, 21 (1911). See *Weeks* v. *Calnan*, 39 Mass. App. Ct. 933, 934 (1995). The determination whether a given consequence was within the parties' contemplation as a likely result of a breach is made by reference to the time at which the contract was made, as distinguished from a point or points in time subsequent to the time of contracting. See *Bucholz* v. *Green Bros. Co.*, 272 Mass. 49, 54 (1930); *Boylston Hous. Corp.* v. *O'Toole*, 321 Mass. 538, 562 (1947); *First Pa. Mort. Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 627 (1985). See also *Short* v. *Riley*, 150 Ariz. 583, 585 (Ct. App. 1986); *Fairfield Dev., Inc.* v. *Georgetown Woods Senior Apartments Ltd. Partnership*, 768 N.E.2d 463, 473 (Ind. Ct. App. 2002); Restatement (Second) of Contracts § 351 (1981).

Nothing in the record indicates that the town had informed Cervelli, prior to the time of his signing the option agreement, that it would lose $50,000 if Cervelli breached the agreement, or that Cervelli had any knowledge of the grant. In support of its damage claim, the town refers only to record evidence, in the form of letters written by its counsel well after Cervelli had faxed the signed option agreement and, thereby, bound himself to the agreement. In the town's May 12, 2000, letter, the town's counsel informed Cervelli that delay in receiving the original option agreement and in closing the land transfer "could jeopardize funding of $100,000 or more" because the town "need[ed] to meet . . . deadlines to receive state funding and grants." In the town's June 30, 2000, letter, the town's counsel stated that "[w]ithout a deed in hand today the state grant is lost and our claim for damages will be pursued." Letters referring to the grant being lost as a consequence of Cervelli's

breach, written after Cervelli had bound himself to the deal, cannot serve as proof that Cervelli and the town had contemplated, when Cervelli signed the option agreement, that $50,000 would be lost if Cervelli breached, or that Cervelli otherwise should have had reason to foresee the probability of such a loss. On this record, the town has failed to sustain its burden of showing that the loss was within the contemplation of the parties when Cervelli executed the option agreement.

*Conclusion.* The town is entitled to specific performance under the terms of the option agreement upon its tendering of the agreed upon sales price of $1,380,000. It was error, however, for the judge to award the town damages. The judgment is reversed insofar as it awards damages to the town in the amount of $50,000, and in all other respects the judgment is affirmed.

*So ordered.*