Nickerson, Gary A., J.
This matter is before the court on defendant’s motion and plaintiffs cross motion for summary judgment under Mass.R.Civ.P. 56(c). Russell A. Wade (Wade) filed this Declaratory Judgment action against Maryland Casualty Company (MCC) to determine whether MCC is obligated to defend and indemnify Wade in the underlying action entitled John S. Davagian, II and Joyce M. Davagian v. Russell Wade, d/b/a Heritage Floor Coverings, Middlesex Superior Court, No. 04-0635 (underlying action). For the following reasons, the defendant’s motion for summary judgment is ALLOWED and the plaintiffs cross motion is DENIED.

*186
BACKGROUND

On January 3, 2003, JohnS. Davagian, Hand Joyce M. Davagian (Davagians) hired Wade to replace the existing floor in their condominium with a new tongue and groove wood floor. Wade hired a subcontractor, Ed McCarthy Floor Covering (McCarthy), to complete the work. McCarthy finished the installation sometime in mid-March and the Davagians inspected the floor in early April. The Davagians complained to Wade that the floor was uneven and had spongy, hollow spots. After unsuccessfully negotiating with Wade to repair this faulty work, the Davagians hired Ideal Floor (Ideal) to remove and replace the defective floor. Because McCarthy glued a layer of cork underlayment to the Durock sub-floor, Ideal was forced to remove the Durock, as well as the cork underlayment and wood floor installed by McCarthy. When removing the Dur-ock a fine dust was created and deposited through the first-floor living area which necessitated the cleaning and repainting of the entire first floor. Subsequently, the Davagians filed the underlying action against Wade alleging breach of contract, breach of warranty, loss of use of premises, and violation of M.G.L.c. 93A.
On November 22, 2002, MCC issued to Wade a Commercial General Liability Policy (the policy) as well as a Residential General Contractor Commercial Form with an effective period of November 22, 2002 to November 22,2003. In the section of the policy entitled Coverage A Bodily Injury and Property Damage Liability (Coverage A), MCC agreed to “pay those sums that the insured becomes legally obligated to pay as damages because of ‘bodily injury’ or ‘property damage’ to which this insurance applies.” Subsection b of the policy states that “this insurance applies to . . . ‘property damage’ only if: (1) the . . . ‘property damage’ is caused by an ‘occurrence.’ ” As defined by the policy, the term occurrence “means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.”
Coverage A is limited by a number of exclusions. Exclusion “m” entitled Damage to Impaired Property or Property Not Physically Injured (Exclusion “m”), excludes from coverage “ ‘Property Damage’ to ‘impaired property’ or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in ‘your product’ or ‘your work.’ ” “Impaired Property,” according to the policy, is “tangible property, other than ‘your product’ or ‘your work’ that cannot be used or is less useful because: a. (i]t incorporates ‘your product’ or ‘your work’ that is known or thought to be defective, deficient, inadequate or dangerous ... if such property can be restored to use by: a. the repair, replacement, adjustment or removal of ‘your product’ or ‘your work’
Exclusion “j,” entitled Damage to Property, excludes from coverage “Property Damage to: . . . (6) That particular part of any property that must be restored, repaired or replaced because ‘your work’ was incorrectly performed on it.” The Damage to Property exclusion also states that “Paragraph (6) of this exclusion does not apply to ‘property damage’ included in the ‘products-completed operations hazard.’ ” “Products-completed operations hazard” includes all “property damage occurring away from premises you own or rent and arising out of ‘your product’ or ‘your work’ except: ... (2) [w]ork that has not yet been completed or abandoned. However, ‘your work’ will be deemed completed at the earliest of the following times: (a) [w]hen all of the work called for in your contract has been completed.” In addition, the “products-completed operations hazard” states “(w]ork that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.”
When Coverage A and the exclusions are read together it is clear the policy applies only to “Property Damage” caused by an “occurrence.” Exclusion “m” limits coverage to property damage arising out of a defect or deficiency in the insured’s work and paragraph (6) of Exclusion “j” excludes coverage to any property that must be restored, repaired or replaced because the insured’s work was incorrectly performed on it. These exclusions would seem to remove from coverage any costs related to the removal and replacement of the faulty floor, as well as any clean-up costs associated with the improper installation. However, a provision in Exclusion “j” removes from the exclusion any property damage included in the products-completed operations hazard which includes work that may need service, maintenance, repair or replacement, but which is otherwise complete.

DISCUSSION

Summary judgment shall be granted when there is no genuine dispute as to any material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the parly establishes the absence of a triable issue, the party opposing the motion must allege specific facts establishing the existence of a genuine issue of material fact. See Pederson, 404 Mass. at 17; Godbout v. Cousens, 396 Mass. 254, 261 (1985). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the non-moving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 *187 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). On a motion for summary judgment, the court considers the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine whether summary judgment is appropriate. McGuiness v. Cotter, 412 Mass. 617, 620 (1992). In determining whether genuine issues of fact exist, the court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. Bailey v. Bellotti, 459 U.S. 970 (1982).

I. Occurrence

Coverage A states that MCC will “pay those sums that the insured becomes legally obligated to pay as damages because of . . . ‘property damage’ . . . only if: (1) the . . . ‘property damage’ is caused by an occurrence.” In the MCC policy, an occurrence is defined as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” In Smartfoods, Inc. v. Northbrook Prop. & Cas. Co., 35 Mass.App.Ct. 239, 242 (1993), when interpreting a similar definition of the word “occurrence,” the Appeals Court adopted the dictionary definition of the term “accident” and stated the term implies “the unexpected.” See American Heritage Diet. 11 (3d ed. 1992); Oxford English Diet. 14 (Compact ed. 1971). In Smartfoods, Inc., the court held the foreseeable consequences of a calculated business decision cannot be considered an accident when the insured is substantially certain that harm will follow from his conduct. Id.
In Vappi & Co., Inc. v. Aetna Cas. & Sur. Co., 348 Mass. 427, 432 (1965), the Supreme Judicial Court stated “(t]his court will be slow to adopt any narrow construction of the term ’’accident." The Supreme Judicial Court stated that “(u]nintended or unforeseen consequences of reckless or negligent acts, and even of intentional acts, at least if not undertaken ’’with malice or intent to injure" the person or property hurt . . . maybe within the definition of “accident.” Id. “The term ’’accident" ... is commonly defined as “an unexpected happening without intention or design.” Liberty Mutual Ins. Co. v. Tabor, 407 Mass. 354, 358 (1990), quoting Beacon Textiles Corp. v. Employers Mut. Liab. Ins. Co., 355 Mass. 643, 646 (1969). It is clear that Massachusetts courts have adopted a broader interpretation of the term “accident” than most other jurisdictions. See Vappi & Co., Inc., 348 Mass. at 432-33 (“The breadth of interpretation given to the term ’accident’ by Massachusetts cases makes it unnecessary to deal with Federal cases and cases from other jurisdictions cited by [insurer]”).
The parties agreed at oral argument that the only damages at issue are the costs associated with the removal and clean-up of the damaged Durock sub-floor. While the removal of the sub-floor was necessitated because of the negligent installation of the wood floor by Wade, the removal and clean-up of the Durock was an unforeseen and unintended consequence of Wade’s faulty workmanship. The decision to glue the cork underlayment to an apparently uneven sub-floor was a calculated business decision on Wade’s part.[2] Based on his conversation with McCarthy, Wade could have foreseen problems with the installation, but it is unlikely that he would have foreseen the damages to the Durock and the costs associated with cleaning and repainting the entire first floor. The removal of the Durock and associated clean-up would be considered the “unintended or unforeseen consequences of [a] reckless or negligent act” and considered an “accident” as interpreted by Massachusetts courts. See Vappi & Co., Inc. v. Aetna Cas. & Sur. Co., 348 Mass. 427 (1965); Beacon Textiles Corp. v. Employers Mut Liab. Ins. Co., 355 Mass. 643 (1969). Installing the wood floor despite the existence of the uneven sub-floor was a calculated business decision on Wade’s part, but Wade could not have foreseen, with substantial certainty, the consequences that followed as required by the Smartfoods, Inc. decision.

2. Exclusion “m” and Exclusion “j"

“The interpretation of an insurance policy is a question of law” and “an insurance policy is to be construed according to the fair and reasonable meaning of its words.” City Fuel Corp. v. National Fire Ins. Co. Of Hartford, 446 Mass. 638, 640 (2006). Exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured. Vappi & Co., 348 Mass. at 431-32. Doubts created by any ambiguous words or provisions are to be resolved against the insurer. August A. Busch & Co. of Mass, Inc. v. Liberty Mut. Ins. Co., 339 Mass. 239, 243 (1959).
However, “[gleneral liability coverage is not intended as a guarantee of the insured’s work, and for that reason, general liability policies contain ‘business risk’ exclusions.” Dorchester Mutual Fire Ins. Co. v. First Kostas Corp., Inc., 49 Mass.App.Ct. 651, 654 (2000). In Dorchester Mutual Fire Ins. Co., the Appeals Court, when interpreting a business risk exclusion with identical language to Exclusion “m,” held that the policy barred coverage for loss of use claims “(1) when the loss was caused by the insured’s faulty workmanship; and (2) when there has been no injury to the property aside from the incorporation of the insured’s faulty work itself.” Id. at 654.[3] When discussing the business risk exclusion, the court in Dorchester Mutual Fire Ins. Co. stated that risks related to the repair or replacement of faulty work “are a normal, foreseeable and expected incident of doing business and should be reflected in the price of the product or service rather then as a cost of insurance to be shared by others.” Id. at 654-55. The damage to the Davagian’s condominium was clearly due to Wade’s faulty workmanship and there is no injury to the property aside from the incorporation of Wade’s faulty work. The removal and replacement of the Durock and associated clean-up *188 costs necessitated by Wade’s faulty work are risks that are expressly excluded from coverage through Exclusion “m.”
Plaintiff argues that a provision of Exclusion “j” removes the alleged damages from Exclusion “j” and back within the coverage of the policy. Exclusion “j” excludes from coverage “Property Damage to: ... (6) That particular part of any property that must be restored, repaired or replaced because ‘your work’ was incorrectly performed on it.” This language would clearly preclude coverage for the damages to the Davagian’s condominium; however, a provision of Exclusion “j” states that “(plaragraph (6) of this exclusion does not apply to ‘property damage’ included in the ‘products-completed operations hazard.’ The products-completed operations hazard includes all property damage arising out of the insured’s work ‘except: ... (2) Work that has not yet been completed . . Therefore, to fall within this provision of the products-completed operations hazard, the property damage must be sustained on work that is complete. In other words, property damage arising out of the insured’s work that is not yet complete does not fall within the definition of products-completed operations hazard and is not removed from Exclusion “j."
The initial installation of the floor was finished sometime in the middle of March and the Davagians inspected Wade’s work in early April. During the Davagian’s inspection in April, they noticed that the floor was uneven and had hollow spots. Richard Mabel, an independent manufacturer representative, inspected the premises and issued a report on April 14, 2003 indicating that the floor had been improperly installed. According to Black’s Law Dictionary, a completed-operations policy is a “fpjolicy usually purchased by a building contractors to cover accidents arising out of a job or an operation that the contractor has completed.” Black’s Law Diet., Seventh Ed. (1999). Generally, construction or renovation projects are not “complete” until the building owner, or their representative, has had an opportunity to inspect the work of the contractor. A two-week time period between installation and inspection is not unreasonable and the Davagian’s right to inspect the finished product was not waived due to the delay. Because Wade’s work was not “completed” as soon as the installation was finished, the property damage sustained does not fall within the definition of “products-completed operations hazard.” A fair and accurate reading of the exclusionary language, with any ambiguity resolved in favor of the insured, leads this court to find that both Exclusion “m” and Exclusion “j” preclude coverage for any damages and clean-up costs associated with the removal of the Durock sub-floor.
3. Duty to Defend
An insurer is obligated to undertake the defense of a third-party complaint against an insured when the allegations are “reasonably susceptible of an interpretation that they stated or adumbrated a claim covered by the policy terms.” Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct 316, 318 (1983). A duty to defend is based not only on the facts alleged in the complaint, but also on the facts known to the insurer. Timpson v. Transamerica Ins. Co., 41 Mass.App.Ct. 344, 346-47 (1996), quoting Desrosiers v. Royal Ins. Co. Of America, 393 Mass. 37, 40 (1984). However, when the allegations in the underlying complaint “lie expressly outside the policy coverage and its purposes, the insurer is relieved of the duty to investigate or defend the claimant.” Timpson, 41 Mass.App.Ct. at 347, quoting Terrio v. McDonough, 16 Mass.App.Ct. 163, 168 (1983).
Applying the duty to defend analysis to this case, this court concludes the allegations in the Davagian’s complaint are insufficient to invoke MCC’s duly to defend under the policy provisions. See Sterilite Corp., 17 Mass.App.Ct. at 319. Wade argues MCC should have known there was damage to the Davagian’s property other than the insured’s work based on MCC’s investigation. Wade claims MCC’s knowledge of the Durock damage and knowledge that Wade was covered by the products-completed operations hazard, established a sufficient basis to trigger MCC’s duty to defend. This court disagrees. It was reasonable for MCC to read the Davagian’s complaint, conduct an investigation and determine that the allegations of damage fell expressly outside of the scope of coverage. Throughout the complaint and investigative reports, reference is made to Wade’s faulty workmanship and damage to property arising out of a deficiency or inadequacy in Wade’s work are expressly excluded from coverage. In addition, MCC could have concluded, as this court did, that Wade’s work was not “complete” so that the terms of the products-completed operations hazard did not apply.

ORDER

It is therefore ORDERED that summary judgment be ALLOWED for the Defendant and DENIED for the Plaintiff.

Prior to installing the new floor, McCarthy noticed that the sub-floor was not level and brought this to the attention of Wade. Wade left the decision of whether to proceed with the installation up his subcontractor. McCarthy did not feel it was his duty to repair the sub-floor and proceeded with the installation.

In Dorchester Mutual Fire Ins. Co., the court relied upon an identical provision to Exclusion “m” and denied coverage to the insured. In that case, a contractor agreed to paint the exterior of a house. In the process of preparing and painting the exterior, lead paint chips and dust were released and contaminated the interior of the residence. The homeowners were required to pay an additional $17,000 to clean the interior of their home and filed suit against the contractor. The contractor sought indemnification and defense from his insurance company, but the court ruled the damages fell outside the coverage under his policy.